## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 04 2020, 11:43 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Leanna K. Weissmann
Lawrenceburg, Indiana

ATTORNEY FOR APPELLEE

James T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Corey Heidorn,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

June 4, 2020

Court of Appeals Case No.
19A-CR-2902

Appeal from the Ripley Circuit Court

The Honorable Ryan J. King, Judge

Trial Court Cause No.
69C01-1703-F4-7

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Corey Heidorn (Heidorn), appeals following his guilty plea to two Counts of burglary of a dwelling, Level 4 felonies, Ind. Code § 35-43-2-1(1).

We affirm.

# ISSUES

Heidorn presents the court with one issue, which we restate as the following two issues:

> (1) Whether the trial court abused its discretion when it identified the mitigating circumstances at sentencing; and

> (2) Whether his sentence is inappropriate given the nature of his offenses and his character.

# FACTS AND PROCEDURAL HISTORY

Heidorn began using heroin in 2006 and was addicted by 2010, when he was abusing heroin daily. During the early months of 2016, a string of burglaries and thefts were reported in Ripley County. On February 16, 2016, Heidorn and an accomplice broke into the home and outbuilding of Daniel and Abby Leonnetti and took a shotgun, a handgun, a spotting scope, and several chainsaws. Abby discovered Heidorn and his accomplice outside of her home as she was about to turn into her driveway. They fled. On the same day, Heidorn broke into the home and outbuilding of Kenneth Bowling III and took

a firearm and a chainsaw. During the ensuing investigation, law enforcement learned that multiple burglaries had been reported in neighboring Dearborn County. Heidorn became a suspect in the burglaries when his drivers license was found at one of the Dearborn County homes that had been burglarized. His distinctive Nike Shox shoe print was also found at several of the burglarized homes in both counties. After further investigation, search warrants were executed at homes associated with Heidorn and his accomplice which uncovered items taken in the Dearborn and Ripley County burglaries.

[5] On March 23, 2017, the State filed an Information, charging Heidorn with four Counts of Level 4 felony burglary of a dwelling; two Counts of Level 6 felony receiving stolen property, and Class A misdemeanor receiving stolen property for offenses committed in Ripley County. Prior to the resolution of the Ripley County case, Heidorn pleaded guilty and was sentenced for two Counts of Level 4 felony burglary in Dearborn County. On June 4, 2019, Heidorn pleaded guilty in the Ripley County case to two Counts of Level 4 felony burglary of a dwelling pursuant to a plea agreement with the State which capped his individual sentences at nine years. The decision of whether those sentences would be served consecutively or concurrently to one another and to Heidorn's sentence for the Dearborn County offenses was left to the discretion of the trial court. The State also agreed to dismiss all remaining charges against Heidorn.

[6] On May 29, 2019, Heidorn's pre-sentence investigation report was filed with the trial court. Heidorn had seven prior misdemeanor convictions for offenses

including criminal mischief and disorderly conduct and, in addition to his Dearborn County offenses, a prior felony conviction for theft in 2014. Heidorn had violated his probation on one occasion, had two pending probation violations at the time of the instant offenses, and was on pre-trial release on a drug paraphernalia case in Ohio when he committed the instant offenses. Heidorn's drug abuse began at the age of fifteen when he stole his grandmother's pain medication while she was a cancer patient. Heidorn had attended treatment on two occasions prior to his incarceration. Since his incarceration, Heidorn had been discharged from a sobriety program twice due to poor behavior.

[7] On November 14, 2019, the trial court conducted Heidorn's sentencing hearing. Prior to the commencement of the hearing, Heidorn and the State agreed that Heidorn would pay $1,255 in restitution to two other burglary victims, Allen Hill and Jon Strotman. The State had Heidorn's disciplinary record during his incarceration admitted into evidence which showed that he had accumulated thirty-five major rules violations for, among other things, fighting, possession of a makeshift weapon, and testing positive for methamphetamine. During his allocution, Heidorn apologized to the victims of the two burglaries to which he had pleaded guilty.

[8] The trial court found as aggravating circumstances that Heidorn had a criminal record, he had violated the terms of his probation in the past, and he had two pending probation violations. The trial court found these aggravating circumstances to be "significant" and "heavy." (Transcript p. 57). The trial

court found as an additional aggravating circumstance that Heidorn's offenses involved the theft of firearms which put lethal weapons into circulation in the community.

[9] Concerning Heidorn's proposed mitigating circumstances, the trial court judge observed that he "did look at the mitigating factors, [but] I really don't find much." (Tr. p. 58). The trial court found that Heidorn had received a substantial benefit from his plea agreement which reduced the significance for sentencing of his guilty plea and his acceptance of responsibility. The trial court noted that it only considered restitution to be mitigating if it had already been paid and that Heidorn's offer to pay restitution was not a mitigating circumstance because it was not a certainty that it would be paid. As to Heidorn's behavior while incarcerated, the trial court found that Heidorn had been discharged from sobriety programs twice and that Heidorn's recent good behavior in prison was more the result of a desire to receive a lenient sentence than a true effort at reform. Although the trial court stated that "[e]verything that I've seen here today seems to be motivated out of um, selfish reasons, certainly can be seen in that light, and I'm not even looking very hard to find it . . . It kind of stands out to me[,]" it concluded that it would afford Heidorn some leniency. (Tr. pp. 59-60). The trial court sentenced Heidorn to eight years, with two years suspended, for each burglary conviction and ordered him to serve those sentences consecutively to each other and to the Dearborn County sentences.

[10] Heidorn now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Mitigating Circumstances*

Heidorn argues that the trial court abused its discretion when it failed to credit his proposed mitigating circumstances and imposed enhanced, consecutive sentences. Under our current sentencing scheme, so long as a sentence imposed by a trial court is within the statutory range for the offense, it is subject to review only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of the trial court's sentencing discretion occurs if its decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* One way that a trial court may abuse its discretion is when its sentencing statement omits reasons that are clearly supported by the record and advanced for consideration. *Id.* at 490-91. However, because trial courts are no longer required to weigh aggravating and mitigating circumstances, the weight accorded to those circumstances is no longer subject to our review. *Id.* at 491.

Heidorn does not argue that his sentence was outside the statutory range for his offenses or that it was in violation of his plea agreement. Rather, Heidorn's argument centers on his proffered mitigators—his guilty plea, his expressions of remorse, and his offer to pay restitution. Heidorn contends that his guilty plea should have been afforded some mitigating weight by the trial court. However, it has long been recognized that a trial court does not abuse its discretion in failing to recognize a guilty plea as mitigating when the defendant has already

received a substantial benefit as a result. *See Sensback v. State*, 720 N.E.2d 1160, 1164-65 (Ind. 1999) (holding that the trial court did not abuse its discretion by failing to identify Sensback's plea as mitigating where the State had dropped robbery and auto theft charges and agreed not to pursue a sentence of life without parole). Here, the State agreed to drop four other felony charges and a Class A misdemeanor pending against Heidorn in exchange for his plea, which was a substantial benefit to him. *Cotto v. State*, 829 N.E.2d 520, 525-26 (Ind. 2005), the case relied upon by Heidorn, is readily distinguishable, as Cotto did not receive any benefit from the State in exchange for his guilty plea to Class A felony methamphetamine possession where the State dismissed charges against him for its own benefit to simplify the case.

[13] As to Heidorn's expressions of remorse, we note that we accord substantial deference to a trial court's evaluation of such statements. *Sharkey v. State*, 967 N.E.2d 1074, 1079 (Ind. Ct. App. 2012). This is because the trial court actually "views and hears a defendant's apology and demeanor first hand and determines the defendant's credibility." *Id*. The trial court heard Heidorn's apology and expressions of remorse to his victims and found them to be insincere. We will not second-guess the trial court's determination. *See id*. (concluding that the trial court did not abuse its discretion by failing to identify Sharkey's expressions of remorse as mitigating, even where it did not explain on the record its reasons).

[14] Heidorn also contends that the trial court abused its discretion when it did not recognize his willingness to pay restitution as a mitigating circumstance. In

order to show an abuse of the trial court's discretion for failing to find a mitigating circumstance, a defendant must show that the mitigator was both significant and clearly supported by the record. *Anglemyer*, 868 N.E.2d at 493. Although Heidorn agreed to pay restitution to two of his other victims prior to the start of his sentencing hearing, he had not actually paid restitution to any of his victims. Given the trial court's observations about Heidorn's self-interested motivations for making amends and the uncertainty that restitution would be made, we conclude that the trial court acted within its discretion when it found that Heidorn's offer to pay restitution was either insignificant for sentencing, was not clearly supported by the record, or both.

[15] In a related argument, Heidorn contends that, because the trial court failed to properly identify the mitigating circumstances, it abused its discretion in imposing consecutive sentences. Since we have concluded that the trial court did not abuse its discretion when it declined Heidorn's proffered mitigators, this argument fails. We also decline to credit Heidorn's contention that consecutive sentences were an abuse of discretion here because "there is a colorable argument that the two burglaries . . . constitute a single 'episode of criminal conduct' as defined by statute. *Indiana Code* § 35-50-1-2(b)." (Appellant's Br. p. 15). Burglary of a dwelling is specifically excluded from the limitation on consecutive sentences provided for by Indiana Code section 35-50-1-2(c). *See* I.C. §§ 35-50-1-2(a)(14), -(c) (excluding crimes of violence such as Level 4 felony burglary). Accordingly, we find that the trial court also acted within its discretion when it imposed consecutive sentences.

## II. *Inappropriateness of Sentence*

Heidorn requests that we review the appropriateness of his sentence. "Even when a trial court imposes a sentence within its discretion, the Indiana Constitution authorizes independent appellate review and revision of this sentencing decision." *Hoak v. State*, 113 N.E.3d 1209, 1209 (Ind. 2019). Thus, we may revise a sentence if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offenses and the character of the offender. *Id*. The principal role of such review is to attempt to leaven the outliers. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). The defendant bears the burden to persuade the reviewing court that the sentence imposed is inappropriate. *Robinson v. State*, 91 N.E.3d 574, 577 (Ind. 2018).

### A. *Nature of the Offenses*

When assessing the nature of an offense, the advisory sentence is the starting point that the legislature selected as an appropriate sentence for the particular crime committed. *Perry v. State*, 78 N.E.3d 1, 13 (Ind. Ct. App. 2017). Heidorn pleaded guilty to two Level 4 felonies, which carry a sentencing range of between two and twelve years, with an advisory sentence of six years. I.C. § 35-50-2-5.5. In addition, Heidorn's potential sentencing exposure was limited by the terms of his plea agreement to nine years on the individual sentences. Therefore, Heidorn faced a potential maximum sentence of eighteen years. The trial court sentenced Scruggs to eight years for each burglary, with two years suspended, to be served consecutively to each other and to the Dearborn

County sentences. Thus, the trial court did not impose the maximum sentence allowed by Heidorn's plea agreement, and one-quarter of the individual sentences was suspended.

[18] When reviewing the nature of the offense, we look to the "the details and circumstances of the commission of the offense and the defendant's participation." *Perry*, 78 N.E.3d at 13. Heidorn went on a burglary spree to fund his heroin addiction. The two burglaries to which Heidorn pleaded guilty involved two different victims, a fact that renders consecutive sentences appropriate. *See Serino v. State*, 798 N.E.2d 852, 857 (Ind. 2003) (holding that "consecutive sentences seem necessary to vindicate the fact that there were separate harms and separate acts against more than one person."). Heidorn stole firearms from both homes, which placed weapons into the community and, therefore, increased the harm caused by the offenses.

[19] Heidorn argues that his aggregate sentence is inappropriate because he burgled homes when the homeowners were away and his offenses did not involve physical injury. However, as the experience of Abby Leonnetti, who arrived home to find Heidorn and his accomplice in her driveway, illustrates, the fact that no one was injured was a matter of good fortune for all, as no burglar is guaranteed that a homeowner may not return unexpectedly. We find nothing inappropriate about the slightly enhanced, consecutive sentences imposed here given the nature of the offenses.

## B. *Character of the Offender*

[20]    Neither do we find that Heidorn's character renders his sentence inappropriate. Heidorn has incurred a substantial criminal record consisting of three felony and seven misdemeanor convictions. Heidorn had previously received suspended sentences but violated his probation. Heidorn was also on pre-trial release in another criminal case when he committed the instant offenses. Heidorn incurred thirty-five major rule violations prior to sentencing in the instant matter for conduct including fighting, possessing a weapon, and using drugs. As such, Heidorn has demonstrated a long-term failure to abide by the law, even when he is in the custody of the State. Heidorn also failed to successfully address his drug addiction while free in society and has only remained sober for a substantial period of time while he has been incarcerated. While we encourage Heidorn's more recent efforts to remain sober and refrain from rules violations in prison, we do not find them to be so overwhelming so as to merit a reduction in his sentence.

# CONCLUSION

[21]    Based on the foregoing, we conclude that the trial court did not abuse its discretion when it failed to credit Heidorn's proffered mitigators and that Heidorn's sentence is not inappropriate given the nature of his offenses and his character.

[22]    Affirmed.

Mathias, J. and Tavitas, J. concur